## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOSES KING,

       Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
JUSTICE et al.,

       Defendants.

Civil Action No. 08-1555 (HHK)

### MEMORANDUM OPINION AND ORDER

Plaintiff Moses King, proceeding pro se, brought this action under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, naming as defendants the Department of Justice

("DOJ") and three of its component units, the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), the Executive Office of the United States Attorneys ("EOUSA"),and the

Drug Enforcement Administration ("DEA").  ATF and EOUSA have each filed a motion for

summary judgment.  For the reasons stated herein, the motions will be granted, and the

Department of Justice will be granted summary judgment with respect to the searches and

disclosure decisions made by ATF and EOUSA.

## I.  BACKGROUND

King submitted a written request for information in August 2007 to ATF, EOUSA and

DEA.  *See* Compl. at 2.  ATF responded, notifying him that its search had produced no

responsive documents.  King appealed, but ATF's search was affirmed.  *Id.*  DEA responded

with some disclosures.  King appealed, and the search and disclosure decisions were affirmed.

*Id.* at 2-3.  After a year, EOUSA had not notified King of any search results or produced any documents, and his appeal of EOUSA's non-response had been re-directed.  *Id.* at 3.  In August 2008, King filed the instant action.  Only the DOJ, but not its subordinate components, is a proper defendant in an action under the FOIA.  *See* 5 U.S.C. § 552(a)(4)(B).  Because ATF and EOUSA each have conducted independent searches and provided sworn declarations, their motions will be considered on the merits as representatives of the DOJ.  DEA has also filed a motion for summary judgment, which is not yet ripe, and therefore is not considered in this decision in any respect.

*A.  ATF Searches and Disclosure Decisions*

ATF maintains two databases that are likely to contain information on ATF criminal investigations, the N-Force and TECS (Treasury Enforcement Communications System).  Decl. of Averill P. Graham, Dec. 17, 2008 ("Graham I") ¶¶ 33, 34 (at Docket Entry 16); Decl. of Averill P. Graham, Feb. 26, 2009 ("Graham II") ¶ 4 (at Docket Entry 23).  A search of both TECS and N-Force produced no responsive documents, *see* Graham I ¶¶ 5, 36, but revealed that DEA had a law enforcement file on King, *see* Graham II ¶ 5.  ATF had not opened an individual case file on King.  *Id.*  ATF advised King of the negative results of its searches and invited him to provide additional information to assist with further searching.  *Id.* & Ex. C.

Subsequently, ATF located two pages of responsive documents that it had generated in connection with an interstate firearms nexus search relating to King.  These two pages had been overlooked in the previous search because they were kept in a general file of such searches, and not in any file identified by King's name or other unique identifier.  Graham I ¶ 38.  Once discovered, these two pages were identified and processed by ATF, which was after it had

reported to King that the search of N-Force and TECS had produced no responsive documents, and after he filed this lawsuit. *Id.* Also after this lawsuit was filed, EOUSA, which was conducting its own search in response to King's FOIA request, referred to ATF ten pages of documents in EOUSA's custody which had originally been generated by ATF. *Id.* ¶ 13. Of the two discovered pages and the ten referred pages, ATF determined that two were not related to King and four were exact duplicates, leaving six pages of non-redundant responsive documents. *Id.* ¶ 14. Of the six, three were withheld in full[1] and three were released with redactions of federal law enforcement officers' names and other identifying information, under FOIA exemption (b)(7)(C). *See id.,* ATF *Vaughn* Index at 1-2 (at Docket Entry 16).

B. *EOUSA Searches and Disclosure Decisions*

King also directed his document request to the United States Attorney's Office for the District of South Carolina ("USAO DSC"), where he had been prosecuted. To locate responsive files, that office searched the LIONS (Legal Information Office Network System) database, the Federal Records Center criminal file index, and requested the criminal attorneys in that office to determine whether they had any files relating to King. Decl. of Clarissa W. Whaley, Feb. 6, 2009, ¶¶ 4-6 (at Docket Entry 19). These searches identified a closed criminal case for King, as well as a related pending motion filed under 28 U.S.C. § 2255, both located at the USAO DSC. *Id.* Subsequently, and by chance, a legal assistant at the USAO DSC discovered an unlabeled box of records relating to King's criminal trial which contained two DVDs, six CD ROMs, and approximately 1000 pages of responsive documents. *Id.* ¶ 8. All responsive documents located,

---

[1] One of these, page 4, is noted on the *Vaughn* index as being released in part, but the released information consists of nothing but a court stamp and an underline indicating a website. *See* Graham I, *Vaughn* Index at 1 n.1.

with the exception of grand jury transcripts, were forwarded to the EOUSA for review and

processing in accordance with the law. *Id.* ¶¶ 7, 8.

Of the responsive documents located, 631 pages of documents were referred to other

agencies for review and release determinations (620 pages were referred to DEA, 10 pages were

referred to ATF, and one page was referred to the Internal Revenue Service ("IRS")), 358 pages

(including the 48 pages of grand jury transcripts) and the two DVDs and the 6 CD ROMS were

withheld in full, 47 pages were released in full to King, and 17 pages were released with

redactions. *See* Decl. of Karen M. Finnegan, Feb. 6, 2009 ("Finnegan I"), ¶¶ 12, 16 - 18 & n.2

(at Docket Entry 19); Decl. of  Karen M. Finnegan, June 18, 2009, ¶¶ 6-7.  The one page referred

to the IRS was later released in full to King.  *See* Decl. of Symeria R. Rascoe, Feb. 11, 2009,

¶¶ 1-4 (at Docket Entry 28).

## II.  ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment

must be granted if the pleadings and evidence on file show that there is no genuine issue of

material fact, and that the moving party is entitled to judgment as a matter of law.  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  In considering whether there is a triable issue of

fact, a court must draw all reasonable inferences in favor of the non-moving party.  *Id.* at 255.

The party opposing a motion for summary judgment, however, "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial." *id.* at 248, that would permit a reasonable jury to find in his favor,

*Laningham v. U.S. Navy,* 813 F.2d 1236, 1241 (D.C. Cir. 1987).  The non-moving party must do

more than simply "show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982)).

In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 150-51 (1980), that was reasonably calculated to uncover all relevant information, *Weisberg v. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984), which either has been released to the requestor or is exempt from disclosure, *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001).  To show that its search "us[ed] methods which can be reasonably expected to produce the information requested," *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), the agency may submit affidavits or declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, *Perry v. Block,* 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Perry,* 684 F.2d at 127.  A search need not be exhaustive, *Miller v United States Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1985), and the adequacy of a search is not determined by its results, but by the method of the search itself, *Weisberg,* 745 F.2d at 1485.  An agency's failure to find a particular document does not necessarily indicate that its

search was inadequate. *Wilbur v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. United States Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

*A.   The ATF and EOUSA Searches Satisfy the FOIA Requirements*

ATF and EOUSA have each filed a sworn declaration in support of their respective dispositive motions, very clearly explaining in detail the searches conducted, the search terms used, and the documents located. *See* Graham I ¶¶ 5, 33 - 38 (describing ATF searches, search terms and results); Finnegan I ¶¶ 19, 20. Each has also explained, in nonconclusory terms, why it was reasonable to expect that any responsive documents would be found in the places searched and not elsewhere. Graham I ¶¶ 33 - 34; Finnegan I ¶ 20.

King's challenge to the searches ATF and EOUSA conducted is based in large part on the fact that both units located responsive documents after King filed this lawsuit. *See* Opp'n to ATF at 6; Opp'n to EOUSA at 6. This misses the point in two respects. First, the FOIA requires a search reasonably calculated to produce the requested information, and the results of the search do not necessarily indicate whether the search conducted was reasonable or not. *Weisberg,* 745 F.2d at 1485. Second, a court's assessment of the reasonableness of the search is based on the totality of the searches conducted, regardless of whether they were conducted before or after the lawsuit was filed.

King expresses doubts in particular that ATF would not have a greater number of responsive documents than it has located. He believes that DEA borrowed over 20 kilograms of powder cocaine from ATF to set up the sting operation that ensnared him, and that ATF agents assisted in the surveillance and apprehension of the suspects and took possession of the firearms. Opp'n to ATF at 7-8. On this basis, King concludes that "[t]here should be more documents and

this court should press the ATF to produce them as opposed to granting the agency unjustified summary judgment." *Id.* at 8.  King's lingering doubts appear to be based on a misapprehension of the facts.  As ATF explained multiple times, both before and after King filed this suit, DEA maintained a law enforcement case file on King, but ATF did not.  *See* Graham I ¶ 5 & Ex. C. Further, ATF has averred that its involvement in King's criminal case extended no further than the interstate firearms nexus analysis, that it would be highly unlikely and contrary to ATF policy for ATF to have 20 kilograms of cocaine in its possession, and even more unlikely for DEA to borrow any narcotics from ATF.  *See* Graham II ¶ 6.  In light of such explanations, King's assertions that the ATF and EOUSA searches were inadequate are simply are not supported by the record evidence, and therefore cannot prevail.

King contends that documents found after he initiated this lawsuit are evidence of bad faith.  Opp'n to ATF at 6; Opp'n to EOUSA at 6.  King's position is not supported by law. "[T]he mere fact that additional documents have been discovered does not impugn the accuracy of the [agency] affidavits.  The issue [is] not whether any further documents might conceivably exist but whether [the agency's] search for responsive documents was adequate."  *Goland v. CIA,* 607 F.2d 339, 369 (D.C. Cir. 1978); *see also Meeropol v. Meese,* 790 F.2d 942, 952-53 (D.C. Cir. 1986) (concluding that the institution of a de novo search undercuts any inference of bad faith).  Furthermore, an inference of bad faith "necessarily depends on the factual context." *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 772 (D.C. Cir. 1981) (finding that the agency affidavits had fully explained why some documents were missing).  The record in this case does not support an inference of bad faith.  The declaration filed on behalf of ATF provides a very clear and full explanation of how some documents came to light after this lawsuit was initiated.

*See* Graham I ¶ 38 (explaining how the two pages of interstate firearms nexus materials were located in a subsequent search undertaken after King filed suit ); ¶ 13 (reporting that after this lawsuit was initiated, EOUSA referred ten pages, four of which were duplicates, that were in the custody of EOUSA but had been originally generated by ATF).  In fact, the record establishes that before this lawsuit was initiated, ATF offered to perform additional searches, suggested what information King could provide to assist in a further search, and to that end invited King to explain why he thought that ATF would have records on him.  *See* Graham I, Ex. C ("We can perform additional searches if you tell us <u>why</u> you feel certain ATF would maintain records about you, or describe the circumstances under which you had contact with ATF.").  King declined the offer and exercised his appeal rights instead.  As for EOUSA, King submitted his complaint for filing in August 2008, before he had exhausted his administrative remedies, *see* EOUSA's Mem. in Support of its Mot. for Summ. J. at 6, and before EOUSA had reported any results of its search to him, which it did in October 2008, *see* Finnegan I ¶ 12.  Therefore, EOUSA discovered and released documents only after King had prematurely filed suit against it.  On this record, King has not shown that either ATF or EOUSA conducted searches lacking in good faith.

*B.  The ATF and EOUSA Nondisclosures Are Proper Under the FOIA*

King challenges the decisions of both ATF and EOUSA to redact the names and other identifying information of law enforcement officers and third parties, arguing that because the criminal investigation has concluded and the documents have been released into the public domain, FOIA exemption (b)(7)C) is inapplicable.  *See* Opp'n to ATF at 9; Opp'n to EOUSA

at 7-8.[2]  FOIA exemption (b)(7)(C) applies to information "compiled for law enforcement

purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted

invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Court is aware of no authority

supporting King's proposition that FOIA exemption (b)(7)(C) does not apply because his

criminal case has concluded, and King offers none.  Although King cites *Kidder v FBI,* 517 F.

Supp. 2d 17 (D.D.C. 2007), *see* Opp'n to ATF at 9, that case does not mention FOIA exemption

(b)(7)(C) at all.  The law is to the contrary:  an individual's privacy interest protected by

exemption (b)(7)(C) is not diminished by the "passage of time."  *Fitzgibbon v. CIA,* 911 F.2d

755, 768 (D.C. Cir. 1990).  King's public domain argument fares no better, as he provides no

evidence that "the *exact* portions" of the specific documents at issue are in fact in the permanent

public domain, as required by the case he cites, *Cottone v. Reno,* 193 F.3d 550, 554 (D.C. Cir.

1999) (internal quotation marks omitted).  Accordingly, King's challenge to FOIA exemption

(b)(7)(C) as asserted by ATF and EOUSA fails.

King challenges EOUSA's invocation of FOIA Exemption (b)(7)(D) to withhold the

identity of confidential sources and the information the source revealed.  FOIA Exemption

(b)(7)(D) applies to "records or information compiled for law enforcement purposes" the

disclosure of which "could reasonably be expected to disclose the identity of a confidential

---

[2]  In the same breath, King also challenges the application of 5 U.S.C. § 552a(j)(2) of the
Privacy Act.  *See* Opp'n to ATF at 9; Opp'n to EOUSA at 7.  This provision, however, does not
operate to exempt documents from public disclosure under the FOIA, but rather relieves the
government of its usual obligation under the Privacy Act affirmatively to disclose an individual's
records to that individual upon request.  *See* 5 U.S.C. § 552a(b).  Section 552a(j)(2) exempts the
government from this affirmative obligation only if the records were compiled for law
enforcement purposes by an agency whose principle function is the enforcement of criminal law,
a condition that is not in genuine dispute.

source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  On this score, too, King contends that exemption (b)(7)(D) does not apply, *id.* at 11, because "all the confidential sources were identified when they got on the witness stand at King's federal jury trial," Opp'n to EOUSA at 10.  Of course, King has no way of knowing whether or not the premise of his statement is true; all he could know is that at least ***some*** confidential sources testified about ***some*** of the information provided.  In any case, King has not "'point[ed] to specific information in the public domain that appears to duplicate that being withheld,'" as the law requires him to do before a court can find that the exemption has been waived by the public domain doctrine.  *Cottone v. Reno,* 193 F.3d at 555-56 (quoting *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983)).  Accordingly, his challenge on this ground fails.

King advances a general challenge to the  application of FOIA exemption (b)(7)(A) to withhold information contained in the government's file relating to King's § 2255 proceeding. *See* Opp'n to EOUSA at 9-10 (stating that "EOUSA gets a little fast and loose with the case law when arguing that King's pending § 2255 motion qualifies [as a] 'law enforcement proceeding' under § 552(b)(7)(A").  FOIA exemption (b)(7)(A) applies to "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to interfere with law enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  A motion under § 2255 is a collateral attack on his conviction and sentence; as such, proceedings on the motion necessarily involve matters directly related to King's criminal prosecution and conviction.  King's post-conviction motion is still pending and is therefore prospective, as is required for application of

the exemption.  *See North v. Walsh,* 881 F.2d 1088, 1100 (D.C. Cir. 1989); Slip. op. at 10,

*Helmsley v. Dep't of Justice,* Civil Action No. 90-2413 (TFH) (D.D.C. Sept. 25, 1992).  There

can be no serious debate that such information is "compiled for law enforcement purposes," and

it is easy to imagine information of such a nature that its disclosure "could reasonably be

expected to interfere with law enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  This Court

has previously applied FOIA exemption (b)(7)(A) to post-conviction motions to vacate a

sentence.  *See* Slip. op., *Maydak v. Dep't of Justice,* Civil Action No. 97-1830 (EGS) (D.D.C.

Sept. 1, 1998) (deciding that FOIA exemption (b)(7)(A) may justify withholding records related

to a pending post-conviction attack on sentence); *see also Maydak v. Dep't of Justice,* 218 F.3d

760 (D.C. Cir. 2000) (referring to the district court's decision, but not deciding the issue because

the defendant abandoned its position after all post-conviction appeals had been resolved);

*Helmsley,* No. 90-2143, at 8-10.  Accordingly, King cannot prevail on his argument that

materials related to his § 2255 motion fall outside the scope of FOIA exemption (b)(7)(A).  In

addition, an examination of EOUSA's *Vaughn* Index provided in conjunction with the agency

declaration reveals that the only material generated in relation to the§ 2255 proceeding that were

not disclosed is a one-page draft affidavit and a two-page letter between the government's

attorney and a third party.  *See* EOUSA *Vaughn* Index at 2 (Documents 8 & 9) (at Docket Entry

19).  These documents clearly fall within exemption (b)(7)(A), as well as other the exemptions

asserted as justification for withholding those two documents.

     In very general terms, King also questions the propriety of withholding in full the two

DVDs and the six CD ROMS.  *See* Opp'n to EOUSA at 9.  EOUSA's *Vaughn* Index provides a

description of the contents of these records, asserts multiple exemptions for each, and explains

that they are being withheld to protect against prematurely disclosing evidence to a prospective

jury pool in the event that a new trial is ordered as a result of King's pending post-conviction

motion.  *See* EOUSA *Vaughn* Index at 9 (Documents 34 - 37).  This explanation appears to well-

justified, as do the explanations for the other exemptions asserted as to these same records, and

King has not offered any evidence to raise a genuine issue with respect to these non-disclosure

determinations.

 King asks this Court to conduct an in camera review of the documents as to which

EOUSA asserts an exemption under 5 U.S.C. § 552(b)(5).[3]  "Exemption 5 incorporates the

traditional privileges that the Government could assert in civil litigation against a private litigant.

Those include, for example, the government attorney-client privilege, the government attorney

work product protection, the presidential communications privilege, the state secrets privilege,

and the deliberative process privilege."  *Baker & Hostetler LLP v. Dep't of Commerce,* 473 F.3d

312, 321 (D.C. Cir. 2006).  "The work-product doctrine shields materials prepared in anticipation

of litigation or for trial" by a party's attorney, agent or other representative.  *Judicial Watch, Inc.*

*v. Dep't of Justice,* 432 F.3d 366, 369 (D.C. Cir. 2005).  The deliberative process privilege

protects agency documents that are "both predecisional and deliberative," and "covers subjective

documents which reflect the personal opinion of the writer rather than the policy of the agency."

*Id.* (internal quotation marks omitted).  An in camera review is undertaken by a court only where

the court, in its discretion, determines it to be necessary.  *See Center for Auto Safety v. EPA,* 731

---

[3]  King also states, in this regard, that "EOUSA claims that it does not have to turn over
any of the 1,000 pages plus, none of the DVD's and none of the CD's because its privileged work
product of attorneys."  Opp'n to EOUSA at 8 (citing "Def. Mem. pgs. 14-18).  This is a grossly
inaccurate statement.  In fact, as to the DVDs and CD ROMS, EOUSA asserts a (b)(5) exemption
only as to one DVD, identified as Document 18.  *See* EOUSA *Vaughn* Index.

F.2d 16, 20-21 (D.C. Cir. 1984) (emphasizing that in camera inspection is discretionary and a

"secondary tool of FOIA enforcement") (internal quotation marks omitted).  There is no need for

an in camera review in this case because the EOUSA *Vaughn* Index includes a description of the

documents withheld under this exemption and reveals that the exemption was asserted only as to

those documents to which the exemption logically applies.  As King has not raised any specific

issues of genuine fact with respect to the application of this exemption, his objection does not

overcome the good faith accorded the agency declaration supported by an adequate *Vaughn*

Index.

## III.  CONCLUSION AND ORDER

ATF and EOUSA have each submitted a sworn declaration that explains in detailed and

nonconclusory terms the method and scope of the searches undertaken and the exemptions

claimed as to all withheld information.  Each declaration is supported by a *Vaughn* Index that

describes the type of information withheld, explains why it was withheld, and cites the statutory

exemptions that justify the withheld information.  Upon careful review of these materials, the

Court is satisfied that the searches were reasonable and the exemptions are justified.  King has

raised no issue of genuine dispute with respect to any particular information or category of

information.  Therefore, the Department of Justice is entitled to judgment with respect to the

information addressed in the two dispositive motions under consideration here.  This is not a

final order.  Any final order must await a decision on the dispositive motion filed by the Drug

Enforcement Agency, which is not yet ripe is not addressed here in any respect.  Accordingly, it

is hereby

ORDERED that the motions [16, 19] for summary judgment filed by ATF and EOUSA

are hereby GRANTED, and partial summary judgment is entered for the Department of Justice.


                                        HENRY H. KENNEDY, JR.
Date:  September 9, 2009                 United States District Judge